# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| CONNIE LENDT, | |
| Plaintiff, | No. 18-CV-4080-LTS-KEM |
| vs. | **REPORT AND RECOMMENDATION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Connie Lendt seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Lendt argues that the administrative law judge (ALJ), Chris Yokus, erred in making his decision because he did not give good reasons for failing to fully credit her subjective complaints and the opinion of her treating physician, that some medical evidence does not support his residual functional capacity (RFC)[1] determination, and that because the hypothetical he gave to the vocational expert (VE) did not reflect all of Lendt's limitations. I recommend **affirming** the ALJ's decision.

---

[1] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

## I. BACKGROUND[2]

Lendt filed an application for DI benefits on November 4, 2014, and an application for SSI benefits on April 16, 2015, alleging disability based on anxiety, depression, bipolar disorder, schizoaffective disorder, and chronic back pain beginning on December 1, 2012. AR 23, 105, 119.[3] Lendt's applications were denied initially in August 2015 and upon reconsideration in December 2015. AR 105-171. In connection with those reviews, state agency psychological consultants Scott Shafer, PhD, and Philip Laughlin, PhD, reviewed Lendt's file and issued opinions evaluating Lendt's mental RFC (AR 113-16, 166-69), and state agency medical consultants John May, MD, and Jan Hunter, DO, issued opinions evaluating her physical RFC (AR 112-13, 164-66). Nesrin Abu Ata, MD, Lendt's treating psychiatrist, provided a letter stating that she felt Lendt was disabled and unable to work; and Siouxland Mental Health Center Community Support Specialist Erika Worrell, LBSW, supplied a letter regarding Lendt's limitations and her inability to maintain employment. AR 2162-63. Also, Michael Potter, Lendt's boyfriend at the time, supplied a third-party function report detailing Lendt's limitations and abilities. AR 334-42.

The ALJ held a video hearing on September 1, 2017, at which Lendt and a VE testified. AR 67-69. On December 6, 2017, the ALJ issued a written opinion following the familiar five-step process outlined in the regulations[4] to find Lendt was not disabled.

---

[2] For a more thorough overview, see the Joint Statement of Facts (Doc. 13).

[3] "AR" refers to the administrative record below, filed at Docs. 10-2 to 11-6.

[4] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." ***King v. Astrue***, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." ***Goff v. Barnhart***, 421 F.3d 785, 790 (8th Cir. 2005) (quoting ***Eichelberger v. Barnhart***, 390 F.3d 584, 591 (8th Cir. 2004)).

AR 23-36. At step one, the ALJ determined that Lendt had not engaged in substantial gainful activity since December 1, 2012, the alleged onset date. AR 26. At step two, the ALJ determined that Lendt suffered from the following severe impairments: bipolar disorder, depression, anxiety, and obesity. *Id*. Although the ALJ recognized that Lendt had been assessed with chronic back pain, the ALJ determined that impairment was not severe.[5] *Id*. At step three, the ALJ determined that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of" a listed impairment. *Id*.

At step four, to evaluate whether Lendt's impairments prevented her from performing her past work, the ALJ determined Lendt's RFC:

> [Lendt] has the [RFC] to perform light work . . . except she can perform no climbing of ladders, ropes, or scaffolds. She can perform no more than occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling. She is limited to performing jobs with a specific vocational preparation (SVP) of 1 or 2 and with simple instructions and tasks, and low stress work, defined as having only occasional changes in the work setting and requiring no more than occasional decision making. She can have no contact with the general public and no more than occasional contact with co-workers and supervisors.

AR 29. In making this determination, the ALJ considered the treatment records and the hearing testimony and assigned partial weight to the RFC opinions of Drs. Shafer and Laughlin, some weight to the RFC opinions of Drs. May and Hunter, little weight to the letters from Dr. Abu Ata and Community Support Specialist Worrell, and little weight to the third-party function report. AR 32-34. The ALJ determined that Lendt's statements on the intensity, persistence, and limiting effects of her symptoms were inconsistent with

---

[5] The ALJ determined that there was "no indication on the record that [the alleged back pain] causes more than minimal limitation in [Lendt's] ability to perform basic work activities" and thus concluded that chronic back pain was a non-severe impairment. AR 26. The ALJ then took this determination into consideration at step four when determining Lendt's RFC. AR 31. Lendt does not challenge the ALJ's finding at step two that her alleged chronic back pain was non-severe and instead challenges the ALJ's findings at step four.

3

the medical and opinion evidence, so he did not fully credit them. AR 30-34. Based on his assessment of the evidence, the ALJ found that Lendt could perform her past work in housekeeping and that other jobs existed in the national economy that she could also perform. AR 34. Thus, the ALJ determined that Lendt was not disabled. AR 36.

The Appeals Council denied Lendt's request for review on August 29, 2018 (AR 1-4), making the ALJ's decision the final decision of the Commissioner. *See* **20 C.F.R. §§ 404.981, 416.1481**. Lendt filed a timely complaint in this court, seeking judicial review of the Commissioner's decision (Docs. 1, 3). *See* **20 C.F.R. § 422.210(c)**. The parties briefed the issues (Docs. 14, 15, 16), and the Honorable Leonard T. Strand, Chief Judge of the United States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." ***Kirby v. Astrue***, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." ***Kirby***, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." ***Naber v. Shalala***, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992).

When determining a claimant's RFC, the ALJ must consider "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." ***McKinney v. Apfel***, 228 F.3d 860, 863 (8th Cir. 2000). Lendt challenges the ALJ's finding at step four, arguing that the ALJ erred in failing to fully credit her subjective complaints, that the ALJ erred in weighing treating-source Dr. Abu Ata's opinion, that some medical evidence does not

4

support the resulting RFC determination, and that because the ALJ's RFC determination was flawed, the ALJ's hypothetical to the VE did not include all of Lendt's limitations and thus, the VE's testimony does not constitute substantial evidence for the ALJ's conclusion that Lendt is not disabled.

### A. Weight to Subjective Complaints

When evaluating the weight to assign a claimant's subjective complaints—including pain or nervousness—the ALJ must consider the factors set forth in *Polaski v. Heckler*: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." **Black v. Apfel**, 143 F.3d 383, 386 (8th Cir. 1998); *accord* **Polaski**, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986), *reinstated*,[6] 804 F.2d 456 (8th Cir. 1986). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." **Black**, 143 F.3d at 386. The ALJ may not discredit the claimant's allegations based solely on the absence of objective medical evidence, but the ALJ may rest his credibility finding on "objective medical evidence to the contrary," **Ramirez v. Barnhart**, 292 F.3d 576, 581 (8th Cir. 2002); or "inconsistencies in the record as a whole," **Brockman v. Sullivan**, 987 F.2d 1344, 1346 (8th Cir. 1993). Courts must "defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'" **Schultz v. Astrue**, 479 F.3d 979, 983 (8th Cir. 2007) (quoting **Hogan v. Apfel**, 239 F.3d 958, 962 (8th Cir. 2001)). "The ALJ is not required to discuss each *Polaski* factor as long as the analytical

---

[6] The court did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. **Jones v. Callahan**, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

5

Case 5:18-cv-04080-LTS-KEM    Document 18    Filed 07/22/19    Page 5 of 18

framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004).

Lendt reported in September 2015 that her impairments result in difficulties with her memory, completing tasks, concentrating, and following spoken instructions. AR 349, 351. She also reported that she does not finish what she starts and can pay attention for only thirty minutes to an hour at a time. AR 349. At the video hearing in September 2017, Lendt testified that she is unable to return to work because of her depression, anxiety, and memory loss. AR 96. She testified that depression makes it difficult for her to get out of bed on some days, that she does not drive due to her anxiety, and that she experiences paranoia and anxiety when she is in public. AR 74, 79, 87-88. She also testified that she hears voices every day and has weekly panic attacks. AR 88-89. Regarding her physical impairments, she testified that she suffers from back pain at times but is not currently being treated for her back issues. AR 77. She testified that she has difficulty sitting or standing for more than an hour at a time and that she cannot lift more than ten to fifteen pounds. AR 77-78. Lendt reported in September 2016 that she can walk for only one block before needing to sit or lie down. AR 382. She alleged that in an eight-hour day, she can stand for less than two hours, walk for less than two hours, and sit for five to six hours total. *Id.*

Here, the ALJ set forth several reasons for discounting Lendt's subjective complaints. First, the ALJ found that Lendt's complaints of disabling mental and physical symptoms and limitations were inconsistent with her activities of daily living. AR 32. Lendt testified that she lives alone with her teenage son, performs household chores, prepares meals for herself and her son daily, cleans, attends to her personal care, and does the laundry (with occasional help from her son). AR. 73, 78, 82-83. She likes to color in a coloring book to soothe her anxiety, and she occasionally watches television. AR 83. She uses the public bus once or twice a day to go to appointments and to go grocery shopping, and she sometimes socializes with friends. AR 74, 84. She also testified that she lives in a third-floor apartment and uses the stairs to exercise when she

6

is able. AR 73, 84. A treatment record from January 2015 states that when she took her pain medication, Lendt could cook and clean (dusting and picking up light objects, but not vacuuming). AR 783. In a September 2015 function report, Lendt reported being able to pay bills, count change, handle a savings account, and use a checkbook. AR 309. The ALJ also noted that Lendt reported going on week-long mission trips (AR 32). In August 2014, she told a therapist that she recently attended a church retreat to Wyoming, where she felt fine because she was busy with activities. AR 729, 1020. In July 2015, she attended another week-long mission trip and told a therapist that her mental health was "pretty good" on the trip and that the trip was "very fulfilling to her." AR 2242. Here, the ALJ could find that Lendt's minimal limits in her activities of daily living were inconsistent with her allegations of disability. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005); *see also Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, . . . washing dishes, doing laundry, shopping, driving, and walking[] are inconsistent with subjective complaints of disabling pain."); *Halverson v. Astrue*, 600 F.3d 922, 925, 932 (8th Cir. 2010) (substantial evidence supported that disability due to social phobia, depression, and anxiety was inconsistent with claimant's ability to care for herself and a pet, prepare meals, "do laundry, change sheets, clean her house, iron clothing, vacuum, wash dishes, drive her car, run errands, go out alone, take out trash, wash her car, go shopping, manage her finances, watch television, and read occasional self-help books").

Next, the ALJ also outlined the treatment records and concluded that the medical findings did not support limitations as great as Lendt alleged. AR 30. The ALJ noted inconsistencies between the medical evidence and the claimant's statements about the intensity, persistence, and limiting effects of her symptoms. AR 30. Lendt consistently reported symptoms of anxiety and depression at her appointments. AR 716, 732, 742, 2212, 2217, 2231. However, her providers often noted that she was casually dressed and clean in appearance, had cooperative behavior, displayed good eye contact, reported having good appetite, and had fair insight and judgment. AR 721, 737, 748, 2197, 2201,

7

2210. Dr. Abu Ata, Lendt's treating psychiatrist, noted that she did not appear to be in acute psychiatric or physical distress and was able to establish rapport. AR 2216, 2301. Dr. Abu Ata also noted that Lendt reported passive suicidal ideation at times but had no plan or intent to act because of her son. AR 732, 2272, 2293. Lendt also often denied having suicidal or homicidal ideation, and Dr. Abu Ata often reported that there was no evidence of any suicidal ideation. AR 2197, 2280, 2283, 2286, 2291. Dr. Abu Ata further reported that Lendt had appropriate fund of knowledge and average intelligence. AR 2197, 2262.

The ALJ also noted inconsistencies between the medical evidence and Lendt's complaints of disabling hallucinations and memory loss. AR 30-31. Lendt reported experiencing auditory hallucinations at times. AR 732, 2216, 2285. However, she often denied recently hearing voices at her appointments, and providers often documented that there was no evidence of any delusions or hallucinations. AR 2199, 2201, 2235, 2245, 2253. On the occasions when she had been hearing voices, Lendt often reported not being bothered by them and being able to ignore them. AR 2196, 2252, 2331; *but see* AR 2334 (reporting in March 2017 that the voices were beginning to bother her). In July 2015, Lendt reported that although "she struggles with the voices" sometimes, she "can push through" the voices (AR 2239), and in November 2015, she reported that she can "keep away from them and ignore them" (AR 2252). Further, in September 2016, she reported that the voices were manageable on her medication. AR 2311. Lendt also reported short-term memory impairment after she undertook electroconvulsive therapy treatment. AR 2252, 2262. Lendt stopped the treatment after finding it caused memory loss, and she began reporting that her memory was getting better following its termination (although she still occasionally complained of memory issues). AR 2276, 2282, 2291, 2312. Dr. Abu Ata observed that Lendt had a good response to this treatment and offered her the treatment again, but Lendt declined. AR 2312, 2316, 2334. Also, as noted by the ALJ, the record does not indicate that Lendt has had her memory tested, and Lendt demonstrated no memory issues at her hearing when responding to questions and recalling

8

events. AR 31. Thus, substantial evidence supports the ALJ's finding that Lendt's statements regarding the intensity, persistence, and limiting effects of her symptoms are inconsistent with the treatment notes and overall record.

Lendt argues that the ALJ ignored the reality of her pain causing good days and bad days. Doc. 14 at 7. However, the ALJ could find that the treatment records as a whole support that most of the time, Lendt was not as limited as she claimed. Lendt was initially referred to a pain clinic in 2010 for ongoing low back pain symptoms. AR 638. In November 2012, she returned to the pain clinic for the first time in more than two years with complaints of sharp pain in her lower back and bilateral buttock areas. AR 638-39. She was assessed with chronic low back pain, degenerative disk disease of the lumbar spine, bilateral lumbar facet arthropathy, and bilateral sacroiliac joint dysfunction. AR 691-92. Lendt received treatment at the clinic in the form of injections, radiofrequency ablation, and prescription medication. AR 592, 682, 687-88. Initially, she reported significant reduction in her overall pain levels following treatment (AR 575, 581, 591), and an October 2013 treatment record documented that the ablation treatment had taken care of the major portion of her lower back pain (AR 563). But she later reported that the pain reduction she had been experiencing lasted for at most six months, and she continued to report a "dull, achy, constant pain" in her lower back. AR 558. In February 2014, despite Lendt's continued complaints of constant back pain, her attending physician at the pain clinic documented that she was "in no acute distress," that she "ambulate[d] with a normal gait," and that she could "flex her lumbosacral spine close to 90 degrees without any discomfort." AR 691. The physician noted that there was some tenderness on both sides of the lumbar facet joints and on both sacroiliac joints, but he also reported that her motor strength was normal on both lower extremities, that her "[d]eep tendon reflexes were grossly intact," and that her straight leg raise test was negative. AR 687, 691. Lendt returned to the pain clinic in March 2014 but was told the clinic could do nothing further for her in terms of injections. AR 682. In May 2014, the attending physician at the pain clinic told her that the clinic had nothing more to offer

9

her for pain relief other than prescription medication, and he noted that her last MRI of the lumbosacral spine, which was performed in 2010, was normal. AR 678. He also noted that Lendt did get some pain relief from her medication. *Id*. From the treatment notes in the record, it does not appear that Lendt returned to the pain clinic again. *See* AR 808. Further, as indicated by the ALJ, the record does not contain any imaging or testing undertaken by Lendt during the relevant time period that would support a finding of a severe impairment with respect to back pain. AR 26.

    Lendt continued to complain of back pain to her medical treatment provider. AR 808. In January 2015, she reported that her pain would be 3-4 out of 10 on the numeric pain scale when she was on her medication, but she had run out of medication in the previous month and had not called for a refill. AR 782-85. Lendt's medical treatment provider also documented that Lendt tried a new medication for a week in March 2015 that "worked really well for her," but again she did not call to refill the prescription. AR 773. During appointments when Lendt was not taking medication, her treatment provider reported that she had normal muscle tone, bulk, and strength; that she had normal range of motion; and that she had no joint enlargement or tenderness in her lower extremities (although she did exhibit back tenderness). AR 774, 779. In September 2015, a provider noted Lendt's back pain was "controlled on current meds" (AR 1981), and in October 2015, Lendt denied having back pain and reported that she was not having pain that affected her activity level (AR 1970-71). In treatment records in 2015 and May 2017, Dr. Abu Ata observed that Lendt did not appear to be in acute physical distress and repeatedly documented that Lendt had normal gait, good muscle strength and tone, and no involuntary movements. AR 2170, 2197, 2229, 2338. Here, the ALJ could find that the treatment records as a whole support that Lendt was not as limited as she claimed most of the time. *See Castro v. Barnhart*, 119 F. App'x 840, 842, 844 (8th Cir. 2005) (per curiam) (finding medical evidence of "normal motor strength, normal gait, normal range of motions, and capacity to do straight leg raises without much difficulty," in combination with other factors such as activities of daily living and claimant not seeking

10

treatment, supported ALJ's decision to not fully credit claimant's testimony of "weakness, constant [back] pain, and muscle spasms"). Although the treatment records demonstrate that Lendt has a history of reporting back pain, overall they support the ALJ's decision to discount Lendt's complaints of chronic pain.

In sum, the ALJ gave good reasons, supported by substantial evidence, to not to fully credit all of Lendt's subjective complaints.

### *B. Dr. Abu Ata's Opinion*

When determining a claimant's RFC, the ALJ considers "medical opinions . . . together with the rest of the relevant evidence." **20 C.F.R. §§ 404.1527(b), 416.927(b)**. "Medical opinions" are defined as statements from physicians and psychologists or other acceptable medical sources "that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." **20 C.F.R. §§ 404.1502(a), 404.1527(a)(2), 416.902(a), 416.927(a)(2)**. "The ALJ must give 'controlling weight' to a treating [source's] opinion if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007)); *see also* **20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)**. "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016) (alteration in original) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "Whether the ALJ gives the opinion of a treating [source] great or little weight, the ALJ must give good reasons for doing so." *Id*. The ALJ considers the following factors to determine the weight to assign a medical opinion:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination;

11

> (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting the current **20 C.F.R. §§ 404.1527(c), 416.927(c)**).

Lendt argues that the ALJ did not give good reasons for assigning little weight to the opinion of her treating psychiatrist, Dr. Abu Ata, and that the opinion was entitled to great weight. Doc. 14 at 4. Dr. Abu Ata provided a letter dated March 2016 in which she opined that Lendt was disabled. AR 2162. In the relevant portion of her brief letter, she merely wrote as follows: "Connie Lendt is currently under this physician's care. I feel she is disabled and not able to work at this time." *Id*. The letter did not list Lendt's diagnoses, evaluate her limitations, or provide any other evaluation of her RFC. *Id*. The ALJ acknowledged that Dr. Abu Ata has a "longitudinal familiarity with the claimant's impairments" and is an acceptable medical source. AR 33. The ALJ concluded, however, that the opinion was "somewhat imprecise and vague," "lack[ed] details by failing to provide a function-by-function evaluation of [Lendt's] limitations," and that the question of whether an individual is disabled is reserved to the Commissioner. Thus, the ALJ gave little weight to Dr. Abu Ata's opinion. *Id*.

An ALJ is not required to give any weight to a source's overall conclusion that a claimant is disabled. *See Wagner*, 499 F.3d at 849; **20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1)**; *see also House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination."). Here, the ALJ properly rejected Dr. Abu Ata's conclusory statement that Lendt is "disabled" and "not able to work." AR 2162. Lendt also argues

12

that the letter provided by Community Support Specialist Worrell,[7] Dr. Abu Ata's treatment notes, and the notes of Lendt's therapist support Dr. Abu Ata's conclusion that Lendt is disabled. *See* Doc. 16 at 1. That evidence does not change the fact that Dr. Abu Ata's letter consists of a conclusory statement and contains no functional analysis or a list of restrictions. Dr. Abu Ata's letter did not reflect judgments about the nature and severity of Lendt's impairments; address Lendt's symptoms, diagnoses and prognosis; examine what Lendt can still do despite her impairments; or address her physical or mental restrictions. *Id*. Thus, it does not constitute a medical opinion, *see* 20 C.F.R. §§ 404.1502(a), 404.1527(a)(2), 416.902(a), 416.927(a)(2), let alone an opinion entitled to great weight. The ALJ did not err in assigning little weight to Dr. Abu Ata's opinion.

### C. Some Medical Evidence

The ALJ's RFC determination must be supported by at least some medical evidence that "addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)). As a general rule, "an ALJ is . . . 'required to consider at least some supporting evidence from a [medical] professional.'" *Id*. (alteration in original) (quoting *Lauer*, 245 F.3d at 704). "[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's

---

[7] Specialist Worrell, a licensed social worker, is not an acceptable medical source whose opinion is entitled to controlling weight. *See* **20 C.F.R. §§ 404.1502(a), 404.1527(a)(1), (c)(2)**. Although her letter indicated Lendt "has many days" when she could not leave her apartment and "at times the voices she hears interfere with her ability to manage," it lacked specific functional limitations and abilities and ended with Specialist Worrell's belief that Lendt would not be "able to maintain employment." AR 2163. Lendt does not challenge the ALJ's decision to give this opinion little weight (because it opined on the ultimate issue of disability and based on inconsistencies with examination records and activities of daily living).

13

Case 5:18-cv-04080-LTS-KEM   Document 18   Filed 07/22/19   Page 13 of 18

physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)).

Lendt argues that the ALJ rejected all the medical evidence and adopted his own medical interpretation of her limitations. Doc. 14 at 4. In determining Lendt's mental RFC, the ALJ considered the opinions of state agency consultants Drs. Shafer and Laughlin. AR 32-33. Dr. Shafer found that Lendt had moderate limitations in areas of understanding and memory, sustaining concentration and persistence, maintaining social interactions, and adapting, but that she could "understand, remember, and follow routine instructions"; perform "routine tasks not requiring sustained attention"; "interact appropriately with the public, coworkers, and supervisors on at least a superficial level"; and "adjust to changes in the workplace with supervision." AR 114-15. Dr. Shafer concluded that Lendt "retains the ability to perform routine tasks not requiring sustained attention or extensive contact with others." AR 116. Upon reconsideration, Dr. Laughlin affirmed this opinion, noting that although Lendt's mental condition caused "some notable functional restrictions," her condition was substantially unchanged since Dr. Shafer's review. AR 163, 167-69. The ALJ gave "partial weight" to these opinions but ultimately concluded that Lendt was "somewhat more limited" in social functioning and adapting based on clinical findings and Lendt's testimony. AR 32-33. The ALJ's RFC determination limited Lendt to performing jobs that involved simple instructions and tasks; low stress, with only occasional changes in work setting and no more than occasional decision making; and occasional contact with coworkers and supervisors but no contact with the general public. AR 29.

As for physical limitations, the ALJ also considered the opinions of the state agency consultants Drs. May and Hunter. AR 33. Dr. May opined that Lendt could perform medium exertional work with frequent balancing and climbing ramps and stairs and occasional stooping, kneeling, crouching, crawling, and climbing ladders, ropes and scaffolds. AR 112-13. Dr. Hunter affirmed this opinion upon reconsideration after noting no significant change in Lendt's activities of daily living and that treatment records

14

showed her back pain was controlled with medication. AR 164-66. The ALJ gave "some weight" to these opinions and again, based on Lendt's testimony and other additional evidence, found her to be somewhat more limited than the state agency consultants had opined. AR 33. The ALJ determined that Lendt could perform only light work, that she could only occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl, and that she could never climb ladders, ropes, or scaffolds. AR 29.

The ALJ's RFC determination is consistent with the opinions of the state agency consultants except in the instances when the ALJ imposed *greater restrictions* on Lendt's mental and physical RFC. It does not matter that the ALJ assigned the state agency consultants' opinions only "some weight," since he incorporated virtually all of their found limitations. *See Dickson v. Berryhill*, No. 16-CV-00267-NCC, 2017 WL 1152038, at *7-9 (E.D. Mo. Mar. 28, 2017) (holding that some medical evidence supported the ALJ's RFC determination even though the ALJ gave no more than some weight to all the medical opinions and incorporated the same or greater limitations than the consultative examiner and state agency consultant). The ALJ's reliance on the state agency RFC opinions, combined with the ALJ's review of the entire record, provided some medical evidence that supports the ALJ's RFC determination. *See Vance v. Berryhill*, 860 F.3d 1114, 1120-21 (8th Cir. 2017) (holding that when ALJ gives good reasons for discounting treating physician's opinion, the ALJ may "rely instead on the opinions of the state agency medical consultants," as long as those opinions are "more consistent with the medical evidence."); *Fleming v. Colvin*, No. 14-CV-03109-MEF, 2016 WL 483035, at *8 (W.D. Ark. Feb. 8, 2016) (upholding a RFC determination based on non-examining consultant and review of the entire record, and where the ALJ gave good reasons for discounting the treating source*)*; *Kamann v. Colvin*, 721 F.3d 945, 949-51 (8th Cir. 2013) (rejecting claimant's argument that the ALJ "formulate[d] his own medical opinion" when the ALJ "thoroughly reviewed years of medical evidence on record and issued [an RFC determination] consistent with the views of . . . the reviewing agency psychologist"); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023-24 (8th

15

Cir. 2002) (holding that some medical evidence supported the ALJ's RFC determination when he rejected the treating source's RFC opinion and relied on the opinion of a consulting physician and an independent review of the medical evidence); *see also* ***Stormo v. Barnhart***, 377 F.3d 801, 806-807 (8th Cir. 2004) (finding some medical evidence supported the ALJ's physical RFC determination when it was consistent with the state agency medical consultants' opinions). Substantial evidence, including some medical evidence, supports the ALJ's RFC determination.

### D. VE Hypothetical

An ALJ bears the burden of proving there are jobs in the national economy the claimant can perform. *See* ***Gieseke v. Colvin***, 770 F.3d 1186, 1189 (8th Cir. 2014); ***Goff v. Barnhart***, 421 F.3d 785, 790 (8th Cir. 2005). "In making this determination, the ALJ may rely on testimony by a VE that is 'based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.'" ***Gieseke***, 770 F.3d at 1189 (quoting ***Cox v. Astrue***, 495 F.3d 614, 620 (8th Cir. 2007)). To constitute substantial evidence, a VE's testimony must be based on a hypothetical question that "precisely" describes the claimant's limitations. *See* ***Newton v. Charter***, 92 F.3d 688, 694-95 (8th Cir. 1996). A hypothetical posed to a VE "is sufficient if it sets forth the impairments which are accepted as true by the ALJ." ***Haggard v. Apfel***, 175 F.3d 591, 595 (8th Cir. 1999) (quoting ***Davis v. Shalala***, 31 F.3d 753, 755 (8th Cir. 1994)). Put another way, "the ALJ may exclude any alleged impairments that [the ALJ] . . . properly rejected as untrue or unsubstantiated." ***Perkins v. Astrue***, 648 F.3d 892, 902 (8th Cir. 2011) (quoting ***Hunt v. Massanari***, 250 F.3d 622, 625 (8th Cir. 2001)).

Here, Lendt argues that the ALJ's hypothetical was flawed based on the ALJ's alleged errors in determining her RFC discussed (and rejected) in the preceding sections. *See* Doc. 14 at 9. The relevant hypothetical the ALJ posed to the VE matched the ALJ's RFC determination. The ALJ found that Lendt has the RFC to perform:

16

- light work with no climbing of ladders, ropes, or scaffolds, and no more than occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling;
- limited to jobs with specific vocational preparation (SVP) of 1 or 2 and with simple instructions and tasks;
- low stress work involving only occasional changes in the work setting and decision making;
- and only occasional contact with coworkers and supervisors, and no contact with the general public.

AR 29. The ALJ's hypothetical to the VE reflected an individual of the Lendt's age, education, and work history, with the ability to perform:

- light work with no climbing of ropes, ladders, or scaffolds and no more than occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling;
- limited to SVP 1 or 2 jobs with simple instructions and tasks;
- low stress work of only occasional changes in work setting and decision making;
- and no contact with the general public and no more than occasional contact with coworkers and supervisors.

AR 98, 100. Based on this hypothetical, the VE testified that Lendt could perform her past work in housekeeping, and other jobs that exist in sufficient numbers in the national economy including coin machine collector and production line solderer. AR 100.

In this case, the restrictions posed to the VE mirrored the limitations that the ALJ included in his RFC determination. Accordingly, the ALJ did not err in formulating a hypothetical to the VE.

### III. CONCLUSION

I recommend that the district court **affirm** the decision of the Social Security Administration and enter judgment in favor of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which

objections are made, as well as the parts of the record forming the basis for the objections. **Fed. R. Civ. P. 72**. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See **United States v. Wise***, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**ENTERED** this 22nd day of July, 2019.

*Kelly K.E. Mahoney*
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa